Jeffrey L. Hartman, Esq., #1607
**HARTMAN & HARTMAN**
510 West Plumb Lane, Suite B
Reno, Nevada 89509
Telephone: (775)324-2800
Fax: (775)324-1818
notices@bankruptcyreno.com

Attorney for Debtor-in-Possession

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

IN RE:

LEAP FORWARD GAMING, INC.,

    Debtor in Possession

_____/

**Case No: 16-50850-BTB**
**Chapter 11**

**DECLARATION OF DARBY BRYANT IN SUPPORT OF MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363(b) AND 507 FOR INTERIM AND FINAL ORDERS (i) AUTHORIZING PAYMENT OF WAGES, COMPENSATION AND EMPLOYEE BENEFITS AND CURRENT VENDOR OBLIGATIONS, AND (ii) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

**Hearing Date: OST Pending**
**Hearing Time:**

Darby Bryant, under penalty of perjury of the laws of the United States, declares:

1. I am a resident of the State of Nevada and I am over the age of 18 years.

2. I have personal knowledge of the matters stated herein and would testify under oath as to these matters if called to do so.

///

3. I am the Chief Financial Officer and Controller of Leap Forward Gaming, Inc. ("LFG").

**Events leading to the Chapter 11**

4. LFG was incorporated on 1/29/2010, and was initially capitalized by $4,800,000 in equity investments from JCM Global (public company) and Ernest W. Moody Revocable Trust. LFG's initial business included two segments:

- A wireless communication system (SaffariNet) for slot machines. By 2012, LFG began expanding SaffariNet to include picture-in-picture functionality… connected to Bally's un-encrypted player tracking system used by Las Vegas Sands Corp. casinos.

- A 3rd-party game developer for IGT and Aristocrat (public companies). By 2012, LFG began winding down this unprofitable business.

5. In February 2013, LFG installed its SaffariNet picture-in-picture functionality in the Sands Macao Casino. In May 2013, Macquarie Capital provided $10,000,000 in senior secured loans to LFG, and was engaged as LFG's financial advisor. LFG subsequently launched a process to market itself for sale, which resulted in the submission of a letter of intent from a large public company ("Bidder A") on November 15, 2013 for up to $200,000,000. LFG entered into exclusivity with Bidder A, but sale discussions were terminated in January 2014.

6. In June 2014, LFG installed its SaffariNet picture-in-picture functionality in the MGM Detroit Casino connected to IGT's encrypted player tracking system used by MGM casinos. Per regulators, MGM could not pay LFG until it held a Michigan gaming license. So LFG converted its equity to subordinated loans in December 2014 in order to be licensed and paid in January 2015.

7. In May 2014, November 2014, and May 2015, LFG's lenders provided additional subordinated loans.

2

8. In June 2015, a large public company ("Bidder B") submitted a Letter of Intent to acquire LFG for up to $18,500,000. Sale discussions with Bidder B terminated in September 2015, concurrent with IGT's lawsuit filing against LFG.

9. Six months later, in March 2016, IGT submitted a Letter of Intent to acquire LFG for up to $8,500,000.

**Secured Debt**

10. In May, 2013, LFG entered into a $10,000,000 loan transaction with MIHI, LLC ("MIHI"). The $10,000,000 loan ("Loan") is evidenced by that certain Loan Agreement, dated as of May 3, 2013, repayment of which is secured by essentially all of the personal property owned by LFG. LFG executed two security agreements in connection with the Loan. One security agreement covers all non-intellectual personal property; the second covers intellectual property. MIHI perfected its security interest by, among other things, filing a UCC-1 financing statement with the Nevada Secretary of State as document number 2013012091-4 on May 10, 2013. Subsequently, between May 2014 and April 2015, MIHI loaned LFG an additional $2,750,000 on an unsecured basis. As of the Petition Date, LFG's obligation to MIHI totals approximately $15,435,235, including interest. The senior secured position of MIHI as of the Petition Date is $12,220,822 including principal and interest. The unsecured, subordinated position of MIHI is $3,214,413. As of the Petition Date, LFG holds cash in the approximate amount of approximately $613,000, in which MIHI holds a perfected security interest.

///

///

///

**Unsecured Debt**

11. As of the Petition Date, LFG's obligation to unsecured, subordinated lender Ernest W. Moody Revocable Trust is $6,883,398 including principal and interest. Total unsecured debt is in excess of $10,000,000.

**LFG Business Operations**

12. As of the date of the Petition, LFG has eleven full time employees and one part-time employee residing in Reno, Nevada. Payroll for LFG is handled in-house. Employees are paid every two weeks and tax deposits and quarterly unemployment obligations are also paid by LFG. A copy of the interim operating budget for LFG is attached as **Exhibit A.**

13. LFG maintains three bank accounts, 3947, 3949 and 5194, at the Wells Fargo Bank branch location at 420 Montgomery Street, San Francisco, California ("Wells Fargo Accounts"). Employees accrue vacation pay at 4.62 hours per pay period. Unused vacation pay is paid out upon termination. LFG does not participate in an IRC 401(k) or any other type of plan. LFG provides health insurance for its employees and pays 70% of the monthly family premium. LFG pays its monthly bills to Nevada Energy, other regularly applicable vendors and its landlord. Vendors and suppliers are paid on a current basis. As of the Petition Date, all payments to vendors are current with the exception of Hitachi, who sent an unauthorized shipment and then refused to accept its return; Hitachi has billed LFG $116,208 ($63,328 for delivered product plus $52,880 remaining purchase order commitment).

14. As noted, as of the Petition Date, LFG employs eleven people full time and one employee part time and anticipates doing so for not longer than 120 days, pending consideration by the Court of a motion to sell assets, and, if necessary, a disclosure

statement and plan of liquidation, and resolution of any disputed claims.  It is also possible that some of those employees may be hired by IGT during that 120 day period.  To maintain operations and to preserve the value of LFG in the interim, it is essential that it is able to retain the uninterrupted service of those employees and to pay for services provided to LFG in the ordinary course of its business.  Absent the relief requested, LFG and its employees would likely suffer hardship which would harm interim operations pending a sale hearing intended to address a portion of creditors' claims.

DATED:  July 8, 2016.

                                                     /S/ Darby Bryant
                                                    Darby Bryant