Jeffrey L. Hartman, Esq., #1607
**HARTMAN & HARTMAN**
510 West Plumb Lane, Suite B
Reno, Nevada 89509
Telephone: 775.324.2800
Fax: 775-324-1818
notices@bankruptcyreno.com

Attorney for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | CASE NO. 16-50850-BTB |
| | CHAPTER 11 |
| LEAP FORWARD GAMING, INC., | |
| Debtor-in-Possession. | **DEBTOR'S PLAN OF LIQUIDATION** |
| | **Hearing Date:** OST Pending |
| | **Hearing Time:** |
| _____/ | |

Leap Forward Gaming, Inc., debtor and debtor-in-possession, proposes the following plan of liquidation pursuant to chapter 11 of the Bankruptcy Code:

**ARTICLE 1.   DEFINITIONS**

For the purposes of this Plan, the following terms shall have the meanings specified below. Any term used in the Plan that is not defined herein, but that is defined in the Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.1** "Administrative Claim" means any Claim, including but not limited to claims for compensation of professionals made pursuant to § 330 entitled to be treated as a Priority Claim under § 507(a)(2).[1]

**1.2** "Allowed Administrative Claim" means an Administrative Claim that is an Allowed Claim.

---

[1] Unless otherwise indicated, all section numbers designated as "§" shall refer to Title 11, United States Code.

1

**1.3** "Allowed Claim" means any Claim against the Debtor (a) in the amount and classification set forth in a proof of claim filed with the Court within the time fixed by the Court and as to which no objection has been filed, (b) in the absence of such filing, as set forth in the Debtor's Schedules, unless the Claim was listed in the Schedules as disputed, contingent or unliquidated, in any event as to which no objection to the allowance thereof has been interposed within the applicable period fixed in the Plan or the Confirmation Order, or (c) which has been allowed by a Final Order of the Court. Multiple proofs of claim of the same Class filed by a Creditor shall be aggregated and shall constitute a single Claim. The allowance of Administrative Claims shall be governed by the applicable provisions of the Code.

**1.4** "Allowed Priority Claim" means a Priority Claim that is an Allowed Claim.

**1.5** "Allowed Secured Claim" means an Allowed Claim secured by a Lien, security interest or other charge against property in which the Estate has an interest, or which is subject to setoff under § 553, to the extent of the value (determined in accordance with § 506(a) of the interest of such Allowed Secured Claim in the Estate's interest in such property or to the extent of the amount subject to setoff, as the case may be.

**1.6** "Allowed Tax Claim" means a Tax Claim that is an Allowed Claim.

**1.7** "Allowed Unsecured Claim" means an Unsecured Claim that is an Allowed Claim.

**1.8** "Allowed Wage Claim" means a Wage Claim that is an Allowed Claim.

**1.9** "APA" means that certain Asset Purchase Agreement dated as of June 30, 2016, by and between IGT and the Debtor.

**1.10** "Assignment Agreement" means the assignment agreement substantially in the form attached as **Exhibit A**.

**1.11** "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and any amendments thereof.

**1.12** "Bar Date" means the deadline set by the Bankruptcy Court pursuant to LR 3003 in the Case for filing proofs of claim against the Debtor. The Bar Date in this Case is November 14, 2016, except for a governmental unit which is January 4, 2017. (Docket No. 14.)

**1.13** "Case" means the chapter 11 bankruptcy case of the Debtor, designated as 16-50850-BTB pending before the Court.

**1.14** "Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined in § 101(5).

**1.15** "Claimant" means the holder of a Claim against the Debtor or the Estate.

**1.16** "Class" means a grouping of substantially similar Claims as designated in Article 5 of the Plan.

**1.17** "Class A Distribution" means, collectively, (a) cash payment of (i) the Debtor's

remaining cash collateral and (ii) $2,500,000 proceeds from sale of Purchased Assets, less the Class A Lender Payment, and (b) any Earn Out payments assigned to Prepetition Secured Parties (or their designee) pursuant to a fully executed Assignment Agreement delivered to the Prepetition Secured Parties no later than two (2) business days after the Closing Date.

**1.18** "Class A Lender Payment" means $100,000.00.

**1.19** "Closing Date" has the meaning set forth in the APA.

**1.20** "Code" means the Bankruptcy Code, 11 U.S.C. § 101 et seq., and any amendments thereof.

**1.21** "Committee" means the official committee of creditors holding unsecured claims appointed in the Case.

**1.22** "Confirmation" means the entry of an order by the Court confirming the Plan at or after hearing pursuant to § 1129.

**1.23** "Confirmation Date" means the date of entry of an order of the Court confirming the Plan.

**1.24** "Consummation" means completion of all Distributions to be made under the Plan.

**1.25** "Court" means the United States Bankruptcy Court for the District of Nevada before which the Case is pending.

**1.26** "Creditors" means all entities with Claims against the Debtor or the Estate.

**1.27** "Debt" means liability on a Claim.

**1.28** "Debtor" means Leap Forward Gaming, Inc.

**1.29** "Disbursing Agent" means the liquidating Debtor or any other entity designated by the Court to implement any payments required by the Plan.

**1.30** "Disclosure Statement" means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Court pursuant to § 1125.

**1.31** "Disputed Claims" means Claims against the Debtor or the Estate (a) listed on the Schedules, as such schedules may be amended, modified, or supplemented from time to time, as unliquidated, disputed or contingent; (b) that is the subject of a timely filed objection or request for estimation or is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a final order of Court; or (c) that is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved or overruled by final order of a court of competent jurisdiction.

**1.32** "Distribution(s)" means the property (including payments) required by the Plan to be provided to the holders of Allowed Claims.

**1.33** "Effective Date" means the Closing Date.

**1.34** "Estate" means the bankruptcy estate created upon commencement of the Case pursuant to § 541(a).

**1.35** "Final Order" means an order of the Court that has been entered and either:

**1.35.1** The time for appeal from such entered order has expired with no appeal having been filed timely; or

**1.35.2** Any appeal that had been filed timely has been dismissed or otherwise finally determined.

**1.36** "IGT" means IGT, a Nevada corporation.

**1.37** "Impaired" shall have the meaning provided in § 1124.

**1.38** "Interests" means the equity security interests in the Debtor.

**1.39** "Lien" has the meaning provided by § 101(37).

**1.40** "Leap Forward Gaming, Inc." means the Debtor.

**1.41** "Petition Date" means the date on which the Debtor filed its chapter 11 petition with the Clerk of the Court, July 8, 2016.

**1.42** "Plan" means this Debtor's Plan of Liquidation in its present form or as it may be amended, modified or supplemented.

**1.43** "Prepetition Secured Parties" means Macquarie US Trading LLC in its capacity as Agent with respect to that certain Loan Agreement, dated as of May 3, 2013 (as amended, modified, restated or supplemented from time to time), on behalf of the lenders that are party thereto, and such lenders including MIHI LLC.

**1.44** "Priority Claim" means any claim entitled to priority treatment pursuant to § 507 except for Administrative Claims and Tax Claims.

**1.45** "Property of the Estate" has the meaning provided by § 541.

**1.46** "Pro Rata" means proportionately so that the ratio of the amount of the Distribution made on account of a particular Allowed Claim to the Distributions made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount of such particular Allowed Claim to the total amount of Allowed Claims of the Class of which such particular Allowed Claim is included.

**1.47** "Purchased Assets" has the meaning set forth in the APA.

**1.48** "Related Persons" means, with respect to any person, such person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise)

and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members), partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, and any person claiming by or through any of them.

**1.49** "Release" means the release given by the Releasing Parties to the Released Parties as set forth in Section 11.3 hereof.

**1.50** "Released Parties" means the Prepetition Secured Parties and the respective Related Persons of each of the foregoing entities.

**1.51** "Schedules" means the schedules filed by the Debtor under § 521, Bankruptcy Rule 1007, and Bankruptcy Rule 3003(b)(1), as such schedules and statements have been or may be supplemented or amended from time to time.

**1.52** "Tax Claim" means a Claim entitled to priority treatment pursuant to § 507(a)(8).

**1.53** "Unclaimed Property" means any Distributions which are unclaimed thirty (30) days following the date of distribution. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been paid, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address with which to mail or deliver such property, and (d) interest on cash constituting Unclaimed Property.

**1.54** "Unsecured Claim" means an unsecured, non-priority Claim against the Debtor that is not an Administrative Claim nor secured by any Lien on Property of the Estate.

**1.55** "Wage Claim" means a Claim entitled to priority treatment pursuant to § 507(a)(4) and/or (5).

## ARTICLE 2.   CONSTRUCTION

**2.1** Where not inconsistent or in conflict with the provisions of the Plan, the words and phrases used in the Plan shall have the meanings provided in the Code or the Bankruptcy Rules.

**2.2** Section captions used in the Plan are for convenience only, and shall not affect the construction of the Plan.

**2.3** The first letters of terms defined in the Plan are capitalized.

## ARTICLE 3.   CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

**3.1** To the extent any Claim or portion of any Claim of a Creditor is a Disputed Claim, or

is otherwise contingent or unliquidated, or has not been allowed by the Court, the Disbursing Agent may either reserve and segregate such Distribution under the Plan as is sufficient to provide for each of such Claims under the Plan, ask the Court to determine an appropriate reserve, or ask the Court to estimate for purposes of allowance any contingent or unliquidated Claim which would otherwise delay the administration of the Case.

      **3.2** Article 5 of the Plan designates three classes of Claims. As set forth below, Administrative Claims and Tax Claims of the kind specified in §§ 507(a)(2) and 507(a)(8), respectively, have not been classified and are excluded from the classes set forth in Article 5 of the Plan, in accordance with § 1123(a)(1). A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim or an Allowed Secured Claim in that Class. Multiple proofs of claim filed by a Creditor which qualify for inclusion within the same Class shall be aggregated and, if allowed, shall constitute a single Allowed Claim.

**ARTICLE 4.   ADMINISTRATIVE EXPENSES AND UNCLASSIFIED CLAIMS**

      The holders of Allowed Administrative Claims entitled to priority under section § 507(a)(2), entities entitled to payments under §§ 546(c), and entities entitled to payment of administrative expenses pursuant to §§ 503 and 507(a) shall receive on account of such Allowed Claims or administrative expenses cash in the amount of such Allowed Claims or administrative expenses on or before the Effective Date of the Plan or as soon thereafter as is practicable. Notwithstanding the foregoing, professionals employed at the expense of the Estate, and any entities which may be entitled to an allowance of fees and expenses from the Estate pursuant to §§ 503(b)(2) through (9), shall receive cash in the amount awarded to such professionals and

entities as soon as practicable after an order is entered by the Court approving such award pursuant to §§ 330 or 503(b)(2) through (9), unless any such professional or other entity consents prior to Confirmation to other treatment.

Holders of Allowed Tax Claims, if any, entitled to priority under § 507(a)(8) will be paid on account of such Claims, on the Effective Date or as soon thereafter as is practicable. Payment of Allowed Tax Claims shall include payment of interest at the rate applicable under non-bankruptcy law to such Claims. The Debtor may elect, in its sole discretion, to prepay any such Claim without any penalty for prepayment.

The Debtor shall make payment of Allowed Administrative Claims, Allowed Claims of Estate professionals and Allowed Tax Claims from the Class A Lender Payment.

**ARTICLE 5.   DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

   **Class A**- Secured portion of Prepetition Secured Parties' Claim

   **Class B**- Priority Claims

   **Class C**- Unsecured Claims

**ARTICLE 6.   TREATMENT OF (VOTING) CLASSES IMPAIRED UNDER THE PLAN**

All Classes are Impaired under the Plan and shall be treated in accordance with the terms stated below. The Debtor will solicit acceptances of the Plan from each Impaired Class. Allowed Claims in the Impaired Classes will be treated as follows:

   **Class A**- Receives Distribution of
   the Class A Distribution.

   **Class B** – Receives payment in full.

   **Class C**- Holders of Claims in Class C
   that do not opt out of the Release shall
   receive their Pro Rata share of the remainder of
   the Class A Lender Payment
   after distributions are made to all
   Allowed Priority Claims under Class B.

In the event that any Impaired Class entitled to vote on the Plan shall fail to accept the Plan in accordance with § 1129(a), the Debtor shall request that the Court confirm the Plan in accordance with § 1129(b).

**ARTICLE 7.   MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN**

**7.1 Funding the Plan**.

The Plan will be funded by the sale of the Purchased Assets to IGT pursuant to the APA. As consideration for the Purchased Assets, $2,500,000 cash proceeds from Debtor's asset sale to IGT shall be deposited into the Debtor's existing bank account which also holds the remaining cash collateral.  After Distributions, the bank account will be closed.  Any payments of the Earn Out (as defined in the APA) shall be paid directly to Class A by IGT according to Plan and the terms of the Assignment Agreement.

**7.2 Disbursements**. Disbursing Agent shall make all Distributions in accordance with the Plan. To make the Distributions due under the Plan, the Disbursing Agent shall distribute all property and payments called for by the Plan.

**7.3 Reserve for Disputed Claims**.

**7.3.1** On and after the Effective Date, the Distributions reserved for the holders of Disputed Claims shall not be distributed but shall be held in a segregated account (the "**Disputed Claims Reserve**") for the benefit of the holders of the Disputed Claims entitled thereto under the Plan. Except to the extent that the Court shall have estimated under § 502(c) or otherwise determined that a good and sufficient reserve for Disputed Claims is less than the full amount thereof, there will be deposited into the Disputed Claims Reserve an amount of cash which would have been distributed on account of all Disputed Claims if all Disputed Claims were allowed in the full amount claimed by the holders thereof.

**7.3.2** At such time as a Disputed Claim becomes an Allowed Claim, the

Distribution which would have been disbursed had the Disputed Claim been an Allowed Claim on the Effective Date shall be released from the Disputed Claims Reserve and delivered to the Disbursing Agent for delivery to the holder of such Allowed Claim within thirty (30) days. At such time as all Disputed Claims have been finally determined, the balance of the cash not theretofore distributed shall be distributed to holders of Allowed Claims in accordance with this Plan.

**7.4 Unclaimed Distributions**.

**7.4.1** The Disbursing Agent shall deposit any Unclaimed Property in an Unclaimed Property Reserve to be held in trust for the benefit of the holders of Allowed Claims entitled thereto under the terms of the Plan. For a period of thirty (30) days following the date of distribution, Unclaimed Property, including any principal, interest and dividends, in cash or in kind, as may have been paid on account of any such Unclaimed Property shall be held in the Unclaimed Property Reserve solely for the benefit of the holders of Allowed Claims which have failed to claim such property. Until the expiration of thirty (30) days following the distribution date, Unclaimed Property due to the holder of an Allowed Claim shall be released from the Unclaimed Property Reserve and delivered to such holder upon presentation of proper proof by such holder of its entitlement thereto.

**7.4.2** At the end of thirty (30) days following the distribution date, the holders of Allowed Claims theretofore entitled to Unclaimed Property shall cease to be entitled thereto, and the Unclaimed Property shall then be redistributed to holders of Allowed Claims.

**7.5 Revesting of Property of Estate**. No Property will revest in the Debtor.

**7.6 Post-Confirmation Operations.** The Debtor will not resume operations.

**7.7 Execution and Delivery of Documents**. The Debtor is authorized to execute and deliver documents and instruments as are necessary or appropriate to promote and implement Consummation of the Plan or to carry out the purposes of the Plan.

**7.8 Objections to Claims and Interests**. Any objection to any Claim or Interest shall be filed on or before thirty (30) days following the applicable Bar Date. This time period can be extended by the Court upon request of the Debtor.

**7.9 Bar Date**. The last day for filing proofs of claim against the Debtor shall be the Bar Date fixed by the Court prior to Confirmation of the Plan, i.e., **November 14, 2016**, except for governmental units (**January 4, 2017**) and Administrative Claims. The deadline for filing Administrative Claims, including Claims for compensation and reimbursement of professional persons employed pursuant to Court order in the Case, will be fixed by the Court.

**7.10 Retention and Enforcement of Claims**. Pursuant to § 1123(b)(3), the Debtor may maintain and enforce any Claims of the Debtor or the Estate.

**7.11 Court and United States Trustee Fees**. Prior to the Effective Date, all fees due from the Debtor to the Clerk of the Court and all fees due from the Debtor to the United States Trustee shall be paid in full.

**7.12 Implementation Reports**. Following the Confirmation Date and through Consummation of the Plan, the Debtor shall file implementation reports with the Clerk of the Court every one hundred eighty (180) days setting forth the status of implementation of the Plan. Upon Consummation of the Plan, the Debtor will file an application with the Clerk of the Court requesting the entry of a final decree closing the Case.

**7.13 Section 1146 Exemption**. Pursuant to § 1146(a), the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under § 1129, may not be taxed under any law imposing a stamp tax or similar tax. Transfers under this Plan that are exempt from taxes under § 1146(a) include all transfers by the Debtor after the commencement of its Case in contemplation of the Plan.  Transfers under this Plan that are exempt from taxes under § 1146(a) include the sale and transfer of the Purchased Assets from the

Debtor to IGT, which is a necessary component of the financing without which the Plan cannot be completed. The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes or governmental assessment. Upon Confirmation, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

**ARTICLE 8.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**8.1** Under the Plan, the Debtor expressly rejects on the Confirmation Date any executory contracts and unexpired leases not expressly assumed and assigned to IGT under the terms and conditions of the APA.

**8.2 Deadline to File Rejection Claim**. Claims arising from rejection of executory contracts and unexpired leases under the Plan must be filed with the Clerk of the Court no later than the later of (i) thirty (30) days following the Confirmation Date or (ii) the applicable Bar Date. Failure to timely file such Claims shall result in their disallowance.

**ARTICLE 9.   CREDITORS' COMMITTEE**

No Committee was appointed in this case.

**ARTICLE 10.   POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF PROFESSIONALS**

After the Confirmation Date, the Debtor may employ, without notice, hearing or order of the Court, such attorneys, accountants and other professionals as it may desire to render services on such terms as it deems reasonable. With respect to services rendered by professional persons employed by the Debtor after the Confirmation Date, the Debtor shall be authorized to pay for such services, related costs and expenses without notice, hearing or order of the Court; provided however, that with respect to fees, costs and expenses of such professional persons for services

rendered after the Confirmation Date in or in connection with the Case, or in connection with the Plan and incident to the Case, in the event the Debtor disputes the reasonableness of any such fees, costs or expenses, the Debtor shall pay such professional person only the undisputed amount, if any, and file an application with the Court to determine the reasonableness of the fees, costs or expenses which are in dispute.

**ARTICLE 11.  EFFECT OF CONFIRMATION OF PLAN; INJUNCTIONS; RELEASES**

**11.1  Discharge of Debts**. Pursuant to § 1141(d)(3), Confirmation will not discharge the Claims against the Debtor; *provided*, *however*, that no Holder of a Claim or Interest may, on account of such Claim or Interest, seek or receive any payment or other distribution from, or seek recourse against, the Debtor, IGT or the Prepetition Secured Parties or their respective successors, assigns or property, except as expressly provided in the Plan, and the automatic stay under § 362(a) shall remain in effect until the Case is closed.

**11.2  Injunction**.

(a) The rights afforded in the Plan and the treatment of all Claims shall be in exchange for and in complete satisfaction of all Claims of any nature whatsoever arising prior to the Effective Date, including any interests accrued on such Claims from and after the Petition Date, against the Debtor, the Estate and its property. Except as otherwise provided in the Plan or the Confirmation Order, the Plan and Confirmation Order shall, on the Effective Date preclude all entities from asserting against the Debtor or its property any Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

(b) Except as otherwise provided in the Plan or the Confirmation Order, on an after the Effective Date, all entities who have held, currently hold, or may hold a Claim against the Debtor or the Estate, or their respective property that is based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, that otherwise arose

or accrued prior to the Effective Date, shall be permanently enjoined from taking any of the following actions on account of any such Claim (the "Permanent Injunction"): (a) commencing or continuing in any manner any action or other proceeding against the Debtor, the Estate or their respective property that is inconsistent with the Plan or the Confirmation Order; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Estate or their respective property other than as specifically permitted under the Plan or the Confirmation Order; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, the Estate or their respective property; and (d) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan, the Confirmation Order, or the discharge provisions of Bankruptcy Code Section 1141.  Any entity injured by any willful violation of such Permanent Injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

**11.3   Releases Among Releasing Parties and Released Parties**

**(a)   RELEASES BY DEBTOR AND ESTATE.  EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, THE DEBTOR, IN ITS INDIVIDUAL CAPACITY AND AS DEBTOR-IN-POSSESSION, AS THE CASE MAY BE, AND THE DEBTOR'S ESTATE, AND EACH OF THEIR RESPECTIVE RELATED PERSONS (COLLECTIVELY, THE "RELEASING PARTIES") SHALL, AND SHALL BE DEEMED TO, COMPLETELY, CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASE, WAIVE, VOID, EXTINGUISH AND DISCHARGE EACH AND**

**ALL OF THE RELEASED PARTIES (AND EACH SUCH RELEASED PARTY SO RELEASED SHALL BE DEEMED FOREVER RELEASED, WAIVED AND DISCHARGED BY THE RELEASING PARTIES) AND THEIR RESPECTIVE PROPERTIES AND RELATED PERSONS OF AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, REMEDIES, JUDGMENTS AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY IN WHOLE OR IN PART TO THE DEBTOR, ITS RESPECTIVE ASSETS, PROPERTY AND ESTATE, THE CHAPTER 11 CASE, THE DISCLOSURE STATEMENT, THIS PLAN OR THE SOLICITATION OF VOTES ON THIS PLAN THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF THE DEBTOR OR ITS ESTATE (WHETHER DIRECTLY OR DERIVATIVELY) AGAINST ANY OF THE RELEASED PARTIES; PROVIDED, HOWEVER, THAT THE FOREGOING PROVISIONS OF THIS RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE THE RIGHTS OF SUCH**

**RELEASING PARTY TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR ASSUMED PURSUANT TO FINAL ORDER OF THE BANKRUPTCY COURT. THE FOREGOING RELEASE SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON.**

(b) **Releases by Holders of Claims**.  Effective as of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each holder of a Claim that has indicated on its Ballot its agreement to grant the release contained in this Section 11.3(b) shall, and shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, void, extinguish and discharge the Released Parties from any and all Claims, causes of action and any other obligations, rights, suits, damages, judgments, debts, remedies and liabilities whatsoever, including any Claims or causes of action that could be asserted on behalf of or against the Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereafter arising, in law, equity or otherwise, that such holder of a Claim would have been legally entitled to assert in its own right (whether individually, derivatively or collectively), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, in any way relating or pertaining to (x) the Debtor or its respective assets, property and Estate, (y) the Case, and (z) the Plan, the Disclosure Statement, or any related agreements, instruments or other document; provided, however, that, the foregoing shall

not constitute a waiver or release of any right of the Holder of an Allowed Claim to payment under this Plan or otherwise on account of such Allowed Claim.  The Releases set forth in this Section 11.3 shall be binding upon and shall inure to the benefit of the any chapter 7 trustee in the event the Case is converted to chapter 7.

**11.4  Authorized Acts of the Debtor After Confirmation.**  After Confirmation, the Debtor is authorized and directed to do the following:

(a) close the sale of Purchased Assets in accordance with the APA;

(b) no later than two (2) business days after the Closing Date, make the Class A Distribution to the Prepetition Secured Parties (or their designee);

(c) reserve the Class A Lender Payment;

(d) promptly pay Allowed Administrative Claims, Allowed Claims of Estate professionals, and Allowed Tax Claims;

(e) prosecute any objections to any Disputed Claims;

(f) liquidate any remaining assets of the Estate in the reasonable discretion of the Debtor; and

(g) make a distribution to Class B and Class C in accordance with the terms of the Plan.

Once the Estate has been fully administered, the Debtor shall file a motion with the Court to close the Case and obtain a final decree.

**ARTICLE 12.   MODIFICATION OF PLAN**

**12.1** The Plan may be modified upon motion of the Debtor, or corrected by the Debtor prior to the Effective Date, without notice and a hearing and without additional disclosure pursuant to § 1125 provided that, after notice to the United States Trustee, and all parties who have filed and served a request for special notice in the Case, the Court finds that such modification does not materially or adversely affect any Creditor or any Class of Creditors.

**12.2** At any time prior to Consummation, the Debtor may seek Court authorization to remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or effect such other changes, modifications, or amendments as may be necessary to carry out the purposes and intent of the Plan.

**ARTICLE 13.   GENERAL PROVISIONS**

**13.1 Jurisdiction**. The Court will retain jurisdiction until Consummation of the Plan and an entry of a final decree closing the Case. The Court shall further retain jurisdiction under the Plan for all purposes consistent with the Plan and the Code, which purposes include, but are not limited to:

**13.1.1** The classification or allowance of a Claim of any Creditor and the reexamination of Claims which have been allowed for purposes of voting and the determination of such objections as may be filed against Creditors' Claims.

**13.1.2** The determination of all questions and disputes regarding title to the assets of the Estate, and the determination of all causes of action, controversies, disputes or conflicts, including the right to participate in any Distribution from the Estate, whether or not subject to an action pending as of the Effective Date, between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Code.

**13.1.3** The correction of any defect, curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Order of Confirmation, as may be necessary to carry out the purposes and intent of the Plan.

**13.1.4** The determination of the allowability, validity and priority of Tax Claims against the Debtor or the Estate, whether such Claims are asserted before or after the Effective Date.

///

**13.1.5** The modification or amendment of the Plan after Confirmation pursuant to the Bankruptcy Rules or the Code.

**13.1.6** The enforcement and interpretation of the terms and provisions of the Plan.

**13.1.7** The entry of any order concluding or terminating the Case.

**13.1.8** The granting of extensions of any deadlines set herein.

**13.1.9** The administration of the Case, and implementation and Consummation of the Plan.

**13.2 Interpretation.** To the extent that the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any Claim or Interest, or any other matter, the terms of the Plan shall control.

**13.3 Binding Effect**. Upon Confirmation of the Plan, the Debtor and all Creditors whether or not the Claim of such Creditor is Impaired under the Plan and whether or not such Creditor has accepted the Plan, shall be bound by the provisions of the Plan pursuant to § 1141(a).

**13.4 Applicable Law.** The Plan is to be governed by and construed under the Code and the laws of the State of Nevada as they may be applicable.

**13.5 Implementation Orders**. At any time, the Court may make such orders or give such direction as may be appropriate under § 1142.

DATED: August 3, 2016.

**HARTMAN & HARTMAN**

/S/ Jeffrey L. Hartman
Jeffrey L. Hartman
Attorney for Debtor